UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. CANNON,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No.: 15-CV-2582-CAB-BLM<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 98, 111] |
| UNITED STATES OF AMERICA,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>AUSTAL USA, LLC,<br><br>    Third Party Defendant. | |

This matter is before the Court on separate motions for summary judgment filed by Third Party Defendant Austal USA, LLC ("Austal") [Doc. No. 98] and Defendant/Third Party Plaintiff United States of America [Doc. No. 111]. The motions have been fully briefed, no party has requested oral argument, and the Court deems the motions suitable for submission without a hearing. For the following reasons, both motions are granted.

1

## I. Procedural History

Plaintiff William J. Cannon filed his original complaint on November 17, 2015, naming both Austal and the United States as defendants. One week later, Cannon filed a first amended complaint (the "FAC") asserting the same claims. [Doc. No. 5.] The FAC alleges that Cannon was injured onboard the USS *Coronado* (the "*Coronado*"), a public vessel of the United States, in navigable waters near Mobile, Alabama, and seeks damages under various admiralty laws. The FAC alleges that Cannon was a seaman pursuant to the Jones Act, 46 U.S.C. § 30104, and asserts claims against both Austal and the United States for negligence, maintenance and cure, and the unseaworthiness of the *Coronado*. [*Id.* at ¶¶ 8, 15-17, 18-20, 21-25.] In the alternative, Cannon asserts a separate claim against the United States for negligence under § 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §§ 901, *et seq*. [*Id.* at ¶¶ 26-27.]

On December 29, 2015, Cannon voluntarily dismissed his claims against Austal. [Doc. No. 17.] On January 22, 2016, the United States filed a third party complaint ("TPC") against Austal pursuant to the Federal Rule of Civil Procedure 14(c). [Doc. No. 22.] The TPC alleges that Cannon was working with Austal employees at the time of his alleged injury and it was the acts and/or omissions of the Austal employees that caused Cannon's injuries. [*Id.* at ¶ 11.] The TPC also asserts that although the United States was the owner of the *Coronado*, Cannon's injury was proximately caused by Austal's negligence, breach of duty, breach of statute and/or regulation with respect to safe working conditions. [*Id.* at ¶¶ 3, 14.] The TPC demands judgment in favor of Cannon and against Austal directly, meaning that Austal is required to defend against Cannon's claim as well as the United States's claim, and that this lawsuit proceeds as if Cannon had sued both the United States and Austal. Fed. R. Civ. P. 14(c); *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1018 (9th Cir. 1999) (holding that Rule 14(c) "creates a 'direct relationship' between the plaintiff and the third-party defendant).

## II. Factual Background

Austal is a shipbuilder with a shipyard in Mobile, Alabama. Cannon began working for Austal at the Mobile shipyard in August 2011. He started as a "Vessel Watch Stander," and was later promoted to "Test & Activation Specialist I," which was the title he held at the time of the alleged incident at issue in this case. [Doc. No. 98-3 at 37.] During his time at Austal, Cannon worked a total of 10,478.47 hours. [*Id.* at 37-38.] At most, 509.85 of these working hours (4.87%) occurred upon a vessel that was at sea, and all of this time was in support of sea trials of vessels being constructed by Austal. [*Id.* at 38.] The remainder of Cannon's working hours were spent on land at Austal's shipyard or aboard ships at various stages of construction that were moored to piers at the shipyard. [*Id.*]

Austal constructed the *Coronado*, a "Littoral Combat Ship" also referred to as LCS-4, for the United States Navy. According to Cannon, from the date he was hired through November 25, 2013 (the date of the alleged accident here), Austal assigned him only to the *Coronado*. [Doc. No. 39-2.] Cannon declares that during that time, eighty-five percent of his working hours were "aboard the LCS 4 while upon the navigable waters of the United States." [*Id.*] According to Cannon, the *Coronado* was "capable of navigation" for eighty percent of the two years leading up to the alleged accident. [*Id.*] His job responsibilities consisted of working "upon the various systems of the ship to perfect their operation after the systems were finished construction by craft." [*Id.*]

The last sea trials for the *Coronado* ended on August 23, 2013. [Doc. No. 111-16 at 2-3; 111-18 at 1.][1] On September 27, 2013, the *Coronado* was delivered to the Navy at the

---

[1] In his opposition, Plaintiff argues that the Court should not consider the declarations of Captain John Kochendorfer [Doc. No. 111-22] and Lowell Redd [Doc. No. 111-16]. Kochendorfer was the commanding officer of the *Coronado* on November 25, 2013, and his declaration simply describes the operational status of the *Coronado* on that date and states that Korchendorfer is unaware of any incident that Cannon alleges occurred on the *Coronado* on that date. The United States disclosed Korchendorfer in its initial disclosures, but Cannon argues that his declaration should be excluded because the United States opposed Cannon's motion to take Kochendorfer's deposition, which Magistrate Judge Major ultimately denied. Cannon, however, only argued that he wanted to depose Kochendorfer concerning accident reporting procedures and to learn about vessel safety, standards and procedures. [Doc. No. 92 at

Austal shipyard. [Doc. No. 112-15.] However, with the exception of two days in December, from September 27, 2013 through January 6, 2014, the *Coronado* remained pierside at Austal's shipyard in Mobile while Austal and other contractors completed work on open trial cards, which noted deficiencies or incomplete parts of the vessel. [Doc. No. 98-3 at 38; 98-1 at 3.]

The FAC alleges that Cannon was injured onboard the *Coronado* on November 25, 2013. According to Cannon's deposition testimony, while Cannon was leaving the ship, a Naval commander asked Cannon and "an Austal guy" to help two Navy men move a ramp or lift. [Doc. No. 98-2 at 45.] In Cannon's words:

> [W]e all four grabbed each corner . . . and we kind of looked at each other and "one, two, three, lift." And as we began to lift, one of the Navy guys slipped, his grip slipped. When his grip slipped, the ramp then tilted to the left – well, to the right. And that Navy guy lost his grip, which then had all the weight on me and on . . . the back part of the lift.

[*Id.* at 45.] This incident allegedly injured Cannon's back. In his opposition briefs, Cannon does not cite any testimony from any of the other individuals allegedly involved in the incident. The only eyewitness testimony is from a former Austal safety officer who, when questioned about her affidavit describing the incident as having occurred on November 25, 2013, admitted that she did not work on November 25, 2013, and conceded that the incident

---

7.] Kochendorfer's declaration does not address any of these issues. Moreover, the declaration is largely cumulative of other evidence included with the United States's motion for summary judgment. In any event, while the Court finds no grounds to exclude the declaration, the Court did not need to rely on Kochendorfer's declaration to grant the United States's summary judgment motion.

Redd, meanwhile, works for the Navy at the Supervisor of Shipbuilding, Gulf Coast ("SSGC"). The United States offers his declaration solely as evidence that the last sea trials for the *Coronado* were completed on August 23, 2013. Cannon argues that Redd's declaration should be excluded because he was not disclosed in the United States's initial disclosures. The United States, however, points out that they had no reason to disclose Redd because they did not know that Plaintiff's deposition testimony would make the date of the sea trials relevant. Ultimately, because Plaintiff does not contest that the sea trials concluded on August 23, 2013, and because, if the case were to get that far, there would be plenty of time for Plaintiff to depose Redd before trial, Plaintiff's request that Redd's declaration be excluded is denied.

could have occurred several months earlier. [Doc. No. 111-3.] The United States and Austal both dispute that any incident actually occurred on November 25, 2013 or at all.

### III. Legal Standards on Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.*

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from

the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. That this admiralty case would be tried before a judge instead of a jury does not alter this summary judgment standard. *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir. 1955) ("The federal Constitution gives a right of jury trial in a contested issue in a law action. This right is positive and should not be whittled away by decision of contested issues by the judge at hearings in camera before trial. The summary judgment rule does not confer this power *even in a nonjury case*. The remedy can be invoked only when complete absence of genuine fact issue appears on the face of the record.") (*emphasis* added).

### IV. Admiralty Jurisdiction

"A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'" *Jerome B. Grubhart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995) (quoting U.S. Const., Art. III, § 2). "Congress has embodied that power in a statute giving federal district courts 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction. . . .'" *Id.* (quoting 28 U.S.C. § 1333(1)).

"A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy both a location test and a connection test." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) (internal quotation marks omitted). "The tort must occur on navigable waters and bear a significant relationship to traditional maritime activity." *Id.* (internal quotation marks omitted). Austal argues admiralty jurisdiction is lacking because the connection test is not satisfied insofar as construction of a ship is not traditional maritime activity. The Court is not persuaded. As the Ninth Circuit explained:

> The "connection" or "nexus" test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (internal quotation marks and citations omitted). "[T]he disruption prong does not turn on what happened in this particular case but on whether the general features of the incident have a *potentially* disruptive effect." *Id.* at 1129 (*emphasis* in original); *see also Grubhart*, 513 U.S. at 538 (noting that disruption prong goes "to the potential effects, not to the particular facts of the incident") (internal quotation marks omitted). A court must look at the "general features" of the incident to determine whether it has a potentially disruptive impact on maritime commerce. *Grubhart*, 513 U.S. at 539.

As for the second prong of the connection test, the question is "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539-40. "The test turns on the comparison of traditional maritime activity to the arguably maritime character of the tortfeasor's activity in a given case." *Id.* at 542. Although there is no per se rule, it will ordinarily be the case that "every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction." *Id*. Even storing boats at a marina on navigable waters suffices. *Id.* at 540 (citing *Sisson v. Ruby*, 497 U.S. 358, 367 (1990)).

Applying these standards, there is little question that admiralty jurisdiction applies here. The alleged incident occurred on a ship that had been delivered to the United States Navy which, as Austal admits, was capable of self-propulsion [Doc. No. 98 at 15], while the ship was docked on navigable waters. Whether the *Coronado* was complete pursuant to the terms of the construction contract with the United States is irrelevant to the question of admiralty jurisdiction. Moreover, the circumstances surrounding the alleged tort had nothing to do with the construction of the *Coronado*. Indeed, two of the other three individuals allegedly involved were in the Navy and did not work for Austal. Based on these facts, there is little question that the alleged tort here was connected to maritime activity. Accordingly, the Court is satisfied that it has admiralty jurisdiction over Cannon's claims.

## V. Austal's Motion for Summary Judgment

"The Jones Act provides a cause of action to any 'seaman' who suffers personal injuries in the course of his employment." *Cabral v. Healy Tibbits Builders, Inc.*, 128 F.3d 1289, 1291 (9th Cir. 1997).[2] Although Austal and the United States dispute that Cannon was injured in the course of his employment, Austal's motion for summary judgment focuses primarily on whether Cannon was a "seaman," which is a prerequisite for his Jones Act negligence claim as well as his maintenance and cure and unseaworthiness claims. *See Hall v. Diamond M. Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984) ("Only seamen are entitled to the benefits of maintenance and cure. The standard for determining seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act."); *Knight v. Longaker*, No. C 05-03481 SBA, 2007 WL 1864870, at *11 (N.D. Cal. Jun. 28, 2007) ("The Ninth Circuit has held that claims for unseaworthiness and for maintenance and cure depend on Defendant's qualifying as a 'seaman' under the Jones Act.") (citing *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784 n.3 (9th Cir. 2007)).[3]

Although courts have struggled with the definition of "seaman," one basic principle is that "seamen do not include land-based workers." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 358 (1995) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 348 (1991)). Further, "[l]and-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured. . . ." *Id.* at 361. Instead, "the injured party must

---

[2] The complete text of the Jones Act, 46 U.S.C.A. § 30104, provides: "A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."

[3] *Cf. In re Marine Asbestos Cases*, 265 F.3d 861, 868 (9th Cir. 2001) (holding that "to recover for an injury caused by an unseaworthy condition, a *seaman* must establish that: (1) the *seaman*'s work was in the ship's service and that the warranty of seaworthiness therefore applies; (2) the *seaman* was injured by a piece of equipment not reasonably fit for its intended use; and (3) the piece of equipment was part of the ship's equipment or an appurtenant appliance.") (*emphasis* added).

[] have status as a member of the vessel for it is seamen, not others who may work on the vessel to whom Congress extended the protection of the Jones Act." *Id.* at 362-63 (internal citation and quotation marks omitted); *see also Wilander*, 498 U.S. at 355 ("The key to seaman status is employment-related connection to a vessel in navigation."). Notwithstanding the foregoing, a maritime employee need not work *only* on board a vessel to qualify as a seaman. *Chandris*, 515 U.S. at 363. "[T]he Jones Act remedy may be available to maritime workers who are employed by a shipyard and who spend a portion of their time working on shore but spend the rest of their time at sea." *Id.* at 364. "It is not the employee's particular job that is determinative, but the employee's connection to a vessel." *Wilander*, 498 U.S. at 354.

In *Chandris*, the Supreme Court attempted to bring some clarity to the determination of whether an employee was a seaman under the Jones Act by creating a two-part test. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Chandris*, 515 U.S. at 368 (quoting *Wilander*, 498 U.S. at 355) (internal brackets and quotation marks omitted). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Id*. Despite outlining this two-part test, the Supreme Court also cautioned that when determining Jones Act coverage, "it [is] preferable to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves." *Id.* at 369. "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370.

In its motion for summary judgment, Austal argues only that Cannon does not satisfy the second part of this test because he did not have a connection to the *Coronado* that was substantial in duration and nature. This second requirement "was designed to separate sea-based maritime workers from land-based employees 'who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not

regularly expose them to the perils of the sea.'" *Cabral*, 128 F.3d at 1292 (quoting *Chandris*, 515 U.S. at 368)). Thus:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997). In sum, "[*Harbor Tug*] and [*Chandris*] dictate that when [determining] whether the nature of [Cannon's] connection to [the *Coronado*] is substantial, [the] focus [is] on whether [Cannon's] duties were primarily sea-based activities." *Cabral*, 128 F.3d at 1293. Although "it will often be inappropriate to take [the seaman] question from the jury . . . 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" *Harbor Tug*, 520 U.S. at 554 (quoting *Wilander*, 498 U.S. at 356).

Here, the undisputed evidence shows that Cannon was a land-based worker whose duties rarely took him out to sea. Even assuming the truth of his declaration that he worked exclusively on construction of the *Coronado* in the years preceding the alleged accident and that he spent eighty-five percent of his working hours on the *Coronado* itself while the ship was on navigable waters, Cannon offers no evidence that he was aboard the *Coronado* when it was anywhere but moored to the shipyard where Cannon worked. To the contrary, Austal's undisputed evidence demonstrates that less than five percent of Cannon's total working hours over the course of the five years he worked for Austal was spent on ships actually at sea, and all of those hours were in support of sea trials of newly built ships. [Doc. No. 98-3 at 37-38.]; *cf. Chandris*, 515 U.S. at 371 (noting a rule of thumb that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.").

That the *Coronado* was complete to the point where it could float on navigable waters and was self-propelling is irrelevant because there is no evidence that could lead to the conclusion that Cannon was a member of the *Coronado*'s crew. *Cf. Harbor Tug*, 520

U.S. at 558 (noting that the plaintiff's actual duty did not include any seagoing activity and that he was not going to sail with the vessel once he completed his painting work on it). While the *Coronado* may have been docked on navigable waters for the majority of Cannon's employment, Cannon spent hardly any time on the *Coronado* while it was "in navigation." Thus, all of the evidence points to one conclusion: Cannon was a land-based employee of a shipbulder who happened to be assigned to the construction of the *Coronado*. *See Cabral*, 128 F.3d at 1293 (holding that no reasonable jury could find that the plaintiff could meet the substantial connection test because all of the evidence led to the conclusion that the plaintiff "was a land-based crane operator who happened to be assigned to a project which required him to work aboard the" barge on which he was injured).

In short, no reasonable fact-finder could find that Cannon was a member of the crew of the *Coronado* or that he was anything other than a land-based employee of Austal. Therefore, he was not a seaman for Jones Act purposes. Likewise, "[b]ecause Plaintiff does not qualify as a seaman under the Jones Act, [he] does not qualify as a seaman for the purpose of [his] seaworthiness claim or [his] demand for maintenance and cure." *Knight*, 2007 WL 1864870, at *4. Accordingly, Austal is entitled to summary judgment on these claims. *Wilander*, 498 U.S. at 356.

### VI. The United States's Motion for Summary Judgment

The finding that Cannon is not a seaman is fatal to his Jones Act, maintenance and cure, and unseaworthiness claims against the United States as well. This leaves only his his claim for negligence under Section 905(b) of the LHWCA, which is only against the United States, as the owner of the *Coronado*, because as the Ninth Circuit has explained:

> Pursuant to § 905(a), an employee may not recover in tort for the negligence of his employer; rather, he is entitled to statutory payments. However, § 905(b) allows an employee to recover for the negligence of a *vessel owner*: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel . . . ."

*Scheuring*, 476 F.3d at 787-88 (quoting 33 U.S.C. § 905(b); *emphasis* in original). The LHWCA "excludes from its coverage a master or member of a crew of any vessel," who "are the seamen entitled to sue for damages under the Jones Act. In other words, the LHWCA and the Jones Act are mutually exclusive." *Harbor Tug*, 520 U.S. at 553 (internal quotation marks and citations omitted); *see also Sw Marine, Inc. v. Gizoni*, 502 U.S. 81, 88 (1991)) ("[T]he Jones Act and the LHWCA are mutually exclusive for the very reason that the LHWCA specifically precludes from its provisions any employee who is 'a master or member of a crew of any vessel.'") (internal citations and quotation marks omitted). "Thus, the Jones Act and the LHWCA are complementary regimes that work in tandem: The Jones Act provides tort remedies to sea-based maritime workers, while the LHWCA provides workers' compensation to land-based maritime employees." *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 488 (2005).

In addition to the foregoing, however, to maintain any of his claims against the United States (including the LHWCA claim) Cannon must establish the the United States has waived its sovereign immunity. "As a general rule, '[t]he United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180–81 (9th Cir. 2010) (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996)). Along these lines, Cannon brings his claims against the United States pursuant to the Suits in Admiralty Act ("SIAA"), and the Public Vessels Act (the "PVA"). The SIAA:

> waives sovereign immunity for the United States in cases where "a civil action in admiralty could be maintained" against a private person in the same situation. 46 U.S.C. § 30903(a). That is, if a vessel is owned by the United States, and someone is harmed by the vessel or one of its employees, and the harm is one for which, if the vessel were privately owned, the harmed individual could have sued its owner in admiralty, then the person can bring— indeed, must bring—that admiralty claim against the United States. *Id.*; *see Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 996 (9th Cir. 1997) (through the SIAA, United States is subject to "the same liability . . . as is imposed by the admiralty law on the private shipowner"). This makes the

> SIAA "the maritime analog to the FTCA." *Huber v. United States*, 838 F.2d 398, 400 (9th Cir. 1988). In plain terms, the SIAA applies when (1) a vessel is owned by the United States or operated on its behalf, and (2) there is a remedy cognizable in admiralty for the injury. *See Williams v. Central Gulf Lines*, 874 F.2d 1058, 1061–62 (5th Cir. 1989) (framing SIAA inquiry in two parts: first, whether the vessel is owned by United States or an agent, and second, whether the claim stated is a "traditional admiralty claim"). The SIAA provides no cause of action; it just waives sovereign immunity where an admiralty remedy is available. *Dearborn*, 113 F.3d at 996 n. 1.

*Ali v. Rogers*, 780 F.3d 1229, 1233 (9th Cir. 2015). "The SIAA has a two-year statute of limitations." *Id.* (citing 46 U.S.C. § 30905).

The PVA, meanwhile:

> applies to "civil action[s] in personam in admiralty . . . for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). Claims under the PVA have certain limitations that SIAA claims do not, but none that are relevant here. More importantly, the PVA makes all claims subject to the SIAA, including its statute of limitations and its exclusivity provision, except to the extent to which the two are inconsistent. 46 U.S.C. § 31103; *see also Dearborn*, 113 F.3d at 996–97 (noting that the SIAA's exclusivity rule is incorporated by reference into the PVA). . . . [T]he PVA includes claims arising out of the conduct of employees on a public vessel, not merely direct physical damages. *See Tobar v. United States*, 639 F.3d 1191, 1198 (9th Cir. 2011). And despite expansive revisions to the SIAA, the Supreme Court continues to rule that any suit for damages caused by a public vessel falls under the PVA; under *Tobar* and predecessor cases, those damages will include contract damages. *Id.* Any other admiralty claim against a federally-owned vessel will fall under the SIAA. *United States v. United Cont'l Tuna Corp.*, 425 U.S. 164, 181, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976).

*Id.* at 1234. The differences between the SIAA and PVA are irrelevant here because there is no dispute that regardless of which one provides the basis for the United States's waiver of sovereign immunity, Cannon's claims against the United States are subject to the SIAA's two year statute of limitations.

The United States's main argument in its motion for summary judgment is that Cannon's claims against the United States are time-barred based on the SIAA's two-year statute of limitations. At his deposition, Cannon testified that the incident that caused his

injury occurred within a day or two of the *Coronado*'s sea trials [Doc. No. 111-2 at 8-9]. The United States offers evidence that the sea trials ended on August 23, 2013 [Doc. No. 1116-16]. According to the United States, because the original complaint was not filed until November 17, 2015, which is more than two years after August 25, 2013 (two days after the sea trials ended), Cannon's claims are time-barred.

In his opposition, Cannon does not dispute that the last sea trials for the *Coronado* ended on August 23, 2013. Nor does he make any effort to explain his deposition testimony. Indeed, he ignores his testimony altogether. Instead, Cannon points to evidence that he contends demonstrates that the incident occurred on November 25, 2013, including: (1) Cannon's declaration; (2) an entry in a "First Aid Log" that no one knows who wrote; and (3) an incident report completed by Cannon. None of these constitute admissible evidence that create a triable issue of fact that could lead a reasonable fact-finder to conclude that the incident alleged in the FAC occurred on November 25, 2013.

### *Cannon's Declaration*

With his opposition to the United States' summary judgment motion, Cannon submitted a declaration that does not acknowledge his deposition testimony and states only that his "accident, which is the subject of this action, occurred on the date that the Incident/Near Miss Report No. 131125-642-A001 was completed." [Doc. No. 124-4.] Yet the declaration does not otherwise indicate when the referenced report was completed, and the incident report, which Cannon filled out himself, does not state when it was completed. Regardless, even assuming that Cannon's declaration is a convoluted way for him to declare that the accident in question here occurred on November 25, 2013, "'[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991)). As the Ninth Circuit explained:

> This sham affidavit rule prevents "a party who has been examined at length on deposition" from "rais[ing] an issue of fact simply by submitting an

14

15-CV-2582-CAB-BLM

affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (internal quotation marks omitted); *see also Van Asdale*, 577 F.3d at 998 (stating that some form of the sham affidavit rule is necessary to maintain the principle that summary judgment is an integral part of the federal rules). But the sham affidavit rule "'should be applied with caution'" because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. *Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir.1993)). In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id*. at 998–99.

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

Here, when deposed about the date of the incident at his deposition, Cannon unequivocally stated that it occurred within a day or two of the *Coronado*'s sea trials, and he does not dispute that those trials ended on August 23, 2013. His declaration, meanwhile, presumably intends to state that the incident occurred on November 25, 2013. However, Cannon's declaration does not include any explanation or clarification of his deposition testimony; it simply contradicts it. Thus, it is impossible to reconcile Cannon's declaration with his deposition testimony. The contradiction between Cannon's declaration and his deposition testimony is clear and unambiguous and renders his declaration a sham. Accordingly, Cannon's statement in his declaration that the accident occurred on November 25, 2013 (assuming that is even what he intended to say) is not sufficient to create an issue of fact to overcome summary judgment on the ground that his claims are time-barred.

### *First Aid Log*

The first aid log on which Cannon relies is a handwritten entry on a chart listing a date of "11-25-13," an "in" time of 3:03, and the following under the column for "description of injury": "Lower back pain right side, buddy lifting ramp with 3 other

people, proper lifting technique used." [Doc. No. 124-2 at 47.] The United States argues in its reply that this log is inadmissible hearsay. The United States is correct.

The log is an out of court statement offered for the truth of the matter asserted—that the incident occurred on November 25, 2013. Moreover, there is no evidence in the record as to who completed the log, when it was completed, and for what purpose it was completed, and no grounds to conclude that an exception to the hearsay rule applies.

Further, even if it were admissible, the log says nothing about the date of the alleged accident. At most, it only indicates that Cannon appeared at a first aid area on November 25, 2013, due to back pain. Such back pain could have been caused by an accident that occurred in August. Accordingly, the log is inadmissible hearsay that in any event does not contradict Cannon's deposition testimony or create an issue of fact concerning the date of the accident.

### *Incident Report*

Like the first aid log, the incident report is also inadmissible hearsay to the extent Cannon offers it as proof that the incident occurred on November 25, 2013. There is no evidence of when Cannon completed the report. That Cannon filled out the form at some point and wrote November 25, 2013, as the date of the incident is inadmissible hearsay and does not create an issue of fact to overcome summary judgment.

### *Other Evidence*

None of the other evidence cited in Cannon's opposition is sufficient to create an issue of fact as to the date of the incident. Cannon cites testimony from Karl Otto, the first lieutenant in the operations department and leading chief petty officer aboard the *Coronado* [Doc. No. 124-6 at 2], but Cannon does not identify any testimony indicating that Otto had any knowledge of Cannon's alleged accident despite working on the *Coronado* on November 25, 2013. To the contrary, Otto testified that on November 25, 2013, he had already stowed the ramp extensions that Cannon alleges led to his injury. [Doc. No. 111-6 at 14-15.]

The opposition brief also cites to deposition testimony from Cannon's supervisor, Conrad Harris, concerning Cannon reporting the incident to Harris. Harris, however, testified that he recalls Cannon reporting the incident to him in the "early fall," and earlier than November 25, 2013. [Doc. No. 129-19 at 8.] This testimony is consistent with Cannon's deposition testimony that the accident occurred in August 2015. It does not support Cannon's argument that the accident occurred on November 25, 2013.

Cannon also cites to testimony from Danny Wilson about a conversation Wilson had with Mike Gunter. Putting aside that the testimony is inadmissible hearsay to the extent Cannon seeks to offer it for the truth of what Gunter told Wilson, none of the testimony Cannon cites relates to the date of the accident. Moreover, with its motion, the United States submitted a declaration from Gunter that he did not recall Cannon suffering an injury on the *Coronado* on November 25, 2013, or at any other time. [Doc. No. 111-29.] Thus, even if it were admissible, Wilson's testimony about his conversation with Gunter also does not support Cannon's argument that the incident occurred on November 25, 2013.

\* \* \*

In sum, Cannon testified at his deposition that the incident occurred within a day or two of sea trials that ended on August 23, 2013. Despite his claim that his injury occurred while lifting a ramp with three other men, Cannon does not cite to any testimony from these men supporting his claim that this incident occurred at all, let alone about the date of the incident. The only person identified by Cannon who allegedly witnessed the injury admitted in her deposition that she did not work on November 25, 2013, and conceded that it was possible that the *Coronado* had returned from sea trials a few days before the incident. [Doc. No. 111-3 at 15.] Meanwhile, Cannon's supervisor Harris, to whom Cannon reported the injury, testified that he recalls it happening in early fall and before November 25, 2013. [Doc. No. 129-19 at 8.] Aside from the Cannon's sham declaration, there is no testimony (via declaration or deposition) of anyone who stated they witnessed the incident occur on November 25, 2013, or even that Cannon told them that his injury occurred on that date. Nor is there any other admissible evidence that would support a

finding that the incident occurred on November 25, 2013. In light of the foregoing, the undisputed evidence demonstrates that to the extent Cannon suffered an injury while moving a ramp extension aboard the *Coronado*, that injury occurred in August 2013, and not on November 25, 2013.

The FAC explicitly seeks damages for an injury Cannon suffered aboard the *Coronado* on November 25, 2013. The complete lack of evidence that Cannon suffered an injury aboard the *Coronado* on November 25, 2013 is fatal to all of Cannon's claims because the FAC only asserts claims arising out of an injury that allegedly occurred on November 25, 2013. Any injuries Cannon suffered in August 2013 are simply not a part of this lawsuit. Further, to the extent Cannon was injured aboard the *Coronado* in August 2013, any admiralty claim against the United States arising out of such injury is barred by the SIAA's two year statute of limitations. Accordingly, the United States is entitled to summary judgment on all of Cannon's claims.

## VII. Disposition

In light of the foregoing, it is hereby **ORDERED** as follows:

1. Austal's motion for summary judgment [Doc. No. 98] is **GRANTED**;

2. The United States' motion for summary judgment [Doc. No. 111] is **GRANTED**;

3. The pending motions in limine [Doc. Nos. 108-110, 131, 132] are **DENIED AS MOOT**; and,

4. The Clerk of Court is instructed to enter **JUDGMENT** in favor of Austal and the United States and against Plaintiff, and to **CLOSE** this case.

It is **SO ORDERED**.

Dated: October 24, 2017

Hon. Cathy Ann Bencivengo
United States District Judge